# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

WALTILIA SARE ROBINSON                                                    PLAINTIFF
ADC #719972


v.                                    2:25-cv-00150-JJV


DEXTER PAYNE
Director, EACCC; *et al.*                                                 DEFENDANTS


## MEMORANDUM AND ORDER

### I.      INTRODUCTION

Waltilia Sare Robinson (Plaintiff), who is confined in the East Central Arkansas Community Correction Center (ECACCC), has filed a pro se Amended Complaint alleging Defendants Arkansas Department of Corrections (ADC) Director Dexter Payne, Warden Tameka Coleman, and ECACCC Owners Stanley Booker and Marla Booker violated her constitutional rights by exposing her to black mold that is adversely affecting her health. (Doc. 12.)  Now before the Court is Defendants' Motion for Summary Judgment arguing the case should be dismissed because Plaintiff failed to properly exhaust her administrative remedies before filing this lawsuit. (Docs. 42-44.)  Plaintiff has not responded, and the time has expired for plaintiff to do so.  After careful consideration and for the following reasons, I find the Motion should be GRANTED, the Complaint be DISMISSED without prejudice, and this case be CLOSED.

### II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of

1

demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    DISCUSSION

### A.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with

2

the specific procedural requirements of the incarcerating facility. *Id.* The only exception is if administrative remedies were unavailable. 42 U.S.C. § 1997e(a). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

### B.    Grievance Procedure

The ADC, Division of Community Correction (DCC) grievance procedure in effect at the time of the alleged constitutional violation was Administrative Directive 15-08 Resident Grievance and Appeal Process ("AD 15-08"), which establishes a two-step procedure. (Doc. No. 42-2.) Cynthia Williams, Administrative Review Officer, provided a written Declaration stating that AD 15-08 is "available to residents housed within the DCC." (Doc. No. 42-1 at 1.) And AD 15-08 itself states, "The grievance procedure must be posted on the employee and resident bulletin boards, and in the facility law library. Residents and employees must be given written notification of the grievance procedure upon arrival at the center." (Doc. 42-2 at § III(B)(2).)

The two-step procedure begins with the resident attempting to "informally resolve complaints, grievances, problems, or incidents by submitting a 'Complaint Form for Residents' or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty." (*Id.* at § III(C)(1)(a).) If the issue is not resolved informally or no response is received, "the resident may submit a formal written grievance within 5 days of the occurrence to the Grievance Officer or the Center Supervisor's Designee (Designee) on a 'Grievance Form for Residents.'" (*Id.* at § III(C)(1)(b).)

3

"The Grievance Officer or Designee must transmit a Grievance Acknowledgement Form (obtained from e-OMIS [Electronic Offender Management Information System]) to the grievant within five working days after receipt."  (*Id.* at § III(C)(1)(f).)

If the issue is not resolved, at Step Two of the procedure, "Any grievance decision can be appealed to the Center Supervisor through the normal chain of command. The grievant is entitled to appeal the Center Supervisor's decision within 5 days after receipt of the Center Supervisor's decision by using the Resident Appeal Form."  (*Id.*  at § III(C)(2)(a).)  "Within 30 calendar days, the Deputy Director of Residential Services must review the initial grievance, the Center Supervisor's investigation and response, and the resident's appeal, and if necessary, conduct a separate investigation of the matter and respond to the grievant in writing."  (*Id.*  at § III(C)(2)(b).) As a last step, the Directive states, "The Deputy Director of Residential Services must provide a copy of his/her decision to the appropriate Center Supervisor for filing and notification purposes." (*Id.*)

### C.    Analysis

Ms. Williams says, as Administrative Review Officer at the ECACC, her responsibilities include screening complaints and grievances, entering grievances into e-OMIS, and acting as the liaison between the residents and grievance appeals officials throughout the grievance appeal process.  (Doc. No. 42-1 at 1.)  Ms. Williams reviewed her grievance files regarding inmate Waltilia Robinson and states, "Specifically, I have reviewed Robinson's grievance history prior to August 4, 2025, when this lawsuit was filed. . . [and] [d]uring my review of Robinson's grievance history, I searched for any exhausted grievances filed prior to August 4, 2025, that pertained to Robinson's claims in this lawsuit and Defendants Dexter Payne, Tameka Coleman, Marla Booker, and Stanley Booker." (*Id.* at 4.)  Ms. Williams's search revealed that Plaintiff had

4

not "submitted, appeals or otherwise exhausted any formal grievances while housed at the [ECACC]." (*Id.*) Based on her review, Ms. Williams concluded, "Ultimately, because Robinson did not file any grievances regarding her claims and the Defendants prior to filing this lawsuit, she failed to exhaust her administrative remedies against Defendants Dexter Payne, Tameka Coleman, Marla Booker, and Stanley Booker." (*Id.*)

Plaintiff has offered nothing to prove otherwise. Accordingly, I find Plaintiff failed to exhaust her administrative remedies before filing this lawsuit and Defendants are entitled to summary judgment. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep her out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. However, the exhaustion requirement plays a critical role in the remedy process which the Eighth Circuit has explained as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures"). And the law does not grant me discretion to allow Plaintiff to proceed with claims where her efforts at proper exhaustion fell short.

## IV.     CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.      Defendants' Motion for Summary Judgment (Doc. 42) is GRANTED, the Amended Complaint (Doc. 12) is DISMISSED without prejudice, and this case be CLOSED.

2.      The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order and the accompanying Judgment would not be taken in good faith.

Dated this 6th day of April 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE